GEORGE G. MGDESYAN, ESQ. (SBN 225476)
ARAKSYA BOYADZHYAN, ESQ. (SBN 299917)
MGDESYAN LAW FIRM
4529 Sherman Oaks Avenue
Sherman Oaks, CA 91403
Telephone: (818) 386-6777
Facsimile: (818) 754-6778

Attorney for Plaintiff,
DENZELL YOUNG,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DENZELL YOUNG,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CULVER CITY, CULVER CITY POLICY DEPARTMENT, KYWAN OWENS, RICO GUTIERREZ, and DOES 1 to 10, inclusive<br><br>Defendants. | Case No. 2:25-cv-02967-MWF (RAOx)<br><br>**PLAINTIFF DENZELL YOUNG'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Filed Concurrently with Statement of Disputed Facts, Declaration of Araksya Boyadzhyan]**<br><br><u>HEARING DATES PENDING:</u><br>Type: Motion for Summary Judgment<br>Date: December 16, 2026<br>Time: 10:00 a.m.<br>Ctrm: 5A |

TO THE HONORABLE COURT, ALL INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD HEREIN:

Plaintiff DENZELL YOUNG (hereinafter "YOUNG") opposes Defendants

CITY OF CULVER CITY, CULVER CITY POLICE DEPARTMENT, OFFICER KYWAN OWENS AND OFFICER RICO GUTIERREZ (hereinafter "DEFENDANTS") Motion for Summary Judgment.

This opposition is based on the following:

1. There is a genuine dispute of several material facts that do not warrant a summary judgment to be granted and of the greatest significance is the dispute over: 1) whether Officer Owens choked Plaintiff and/or placed his hands on Plaintiff's neck; 2) whether Officer Owens punched Plaintiff in the head; 3) whether Officer Gutierrez placed his taser on Plaintiff's head in an attempt to use it 4) whether Plaintiff was fighting with the officers at the time of the use of force; 5) whether Plaintiff ran away from officers; 6)whether Officer Owen's pulled Plaintiff by the dreadlocks; 7) whether Defendants' used their combined body weight to takedown Plaintiff to the pavement.
2. A genuine dispute of material fact exists as to whether the force employed by Officers Owens and Gutierrez, as described above, was objectively unreasonable under the totality of the circumstances and therefore violated Plaintiff's Fourth Amendment right to be free from excessive force.

This opposition is based upon the following Memorandum of Points and Authorities, Declaration of Araksya Boyadzhyan and the Court's file and records herein. For the reasons stated in the following Memorandum of Points and Authorities, Plaintiff respectfully requests the Court deny in its entirety Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment.

DATED: November 19, 2026

MGDESYAN LAW FIRM

By: /s/ Araksya Boyadzhyan, Esq.
ARAKSYA BOYADZHYAN
Attorney for Plaintiff,
DENZELL YOUNG

# TABLE OF CONTENTS


Page

**I. INTRODUCTION** .......... 6

**II. STANDARDS FOR A MOTION FOR SUMMARY JUDGMENT** .......... 9

**III. LEGAL ARGUMENTS** .......... 10

A. DEFENDANTS ARE NOT ENTITLED TO JUDGMENT ON PLAINTIFF'S FIRST CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS – EXCESSIVE FORCE .......... 10

i) Officer Owens and Gutierrez's Conduct was Excessive Force .......... 12

ii) Officers Did not use Objectively Reasonable Force .......... 14

iii) The Officers Had No Information that Plaintiff was the Owner of the Vehicle or that He was Armed or Dangerous .......... 15

iv) Defendants' Failure to Intervene .......... 17

B. DEFENDANT OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS THEIR ACTIONS COULD NOT REASONABLY HAVE BEEN THOUGHT CONSISTENT WITH THE RIGHTS THEY VIOLATED .......... 19

(1) Defendant Officers Actions Violated Plaintiff Young's Rights .......... 19

(2) The Right was Clearly Established .......... 21

C. DEFENDANT CITY IS NOT ENTITLED TO JUDGMENT IN ITS FAVOR ON THE SECOND CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS – MONELL CLAIM .......... 23

i. Unconstitutional Custom or Practice .......... 23

ii) Failure to Train .......... 25

**IV. CONCLUSION** .......... 27

# TABLE OF AUTHORITIES

**Cases** Page


*Alexander v. City & Cty. of S.F.*, 29 F.3d 1355, 1367 (9th Cir. 1994) .......... 11
*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) .......... 21
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255(1986) .......... 9, 10
*Andrews v. City of Henderson*, 35 F.4th 710, 717 (9th Cir. 2022) .......... 17
*Atencio v. Arpaio*, 674 F. App'x 623, 625 (9th Cir. 2016) .......... 22
*Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 .......... 10
*Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) .......... 12, 22–23
*Bouman v. Block*, 940 F.2d 1211, 1231-32 (9th Cir. 1991) .......... 23
*Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir.2010) .......... 12, 13
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) .......... 9
*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992) .......... 10
*City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989) .......... 23, 26
*Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) .......... 19
*Cunningham v. City of Wenatchee*, 345 F3d 802, 809 (9th Cir. 2003) .......... 20
*Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) .......... 18
*Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) .......... 20
*Deorle v. Rutherford*, 272 F.3d 1272, 1286 (2001) .......... 22
*Ensley v. Soper*, (11th Cir. 1998) 142 F.3d 1402, 1408 .......... 17
*Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010) .......... 11, 20
*First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, (1968) .......... 10
*Glazer v. City of Long Beach*, 210 F.Supp.2d 1131, 1137–1138 (C.D. Cal. 2000) .......... 20
*Glenn v. Washington County*, 673 F.3d 864, 870, fn. 7 (9th Cir. 2011) .......... 20
*Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001) .......... 24, 25
*Graham v. Connor*, 490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989) .......... 10–12
*Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013) .......... 22
*Hammer v. Gross*, 932 F.2d 842, 846 (9th Cir. 1991) .......... 17
*Heck v. Humphrey* .......... 8
*High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990) .......... 9

## TABLE OF AUTHORITIES (continued)

**Cases (continued)** Page

*Johnson v. Jones*, 515 U.S. 304, 313(1995) .......... 20
*LaLonde v. County of Riverside*, 204 F.3d 947, 950 (9th Cir. 2000) .......... 20, 21
*Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) .......... 11–12
*Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) .......... 26
*Longoria v. Pinal County*, 873 F.3d 699, 710 (9th Cir. 2017) .......... 20, 21
*Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) .......... 12
*Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) .......... 19
*Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994) .......... 22
*Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2003) .......... 22
*Monell v. Department of Social Services of City of New York*, (1978) 436 U.S. 658, 694 .......... 6, 23
*Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012) .......... 22
*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) .......... 9
*Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) .......... 12
*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) .......... 21
*Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) .......... 22
*Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) .......... 19
*Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) .......... 11, 12, 19–20, 22
*Saucier v. Katz*, 533 U.S. 194, 207 (2001) .......... 15, 19, 21
*St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) .......... 23
*Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) .......... 19
*Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) .......... 23
*United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) .......... 18
*Wall v. County of Orange*, 364 F.3d 1107, 1110 (9th Cir. 2004) .......... 20
*Wilkins v. City of Oakland*, 350 F.3d 949, 951 (9th Cir. 2003) .......... 19–21
*Young v. Cty. of L.A.*, 655 F.3d 1156, 1164 (9th Cir. 2011) .......... 16

**Constitutional Provisions, Statutes and Rules**

U.S. Const. amend. IV .......... 9–11, 13, 22
42 U.S.C. § 1983 .......... 6, 8, 17, 23, 26
Penal Code § 69 .......... 8
Penal Code § 242 .......... 8
Penal Code § 245(a)(2) .......... 8
Fed. R. Civ. P. 56(a) .......... 9

## *MEMORANDUM OF POINTS AND AUTHORITIES*

### I. ***INTRODUCTION***

This civil rights action involves an intense factual dispute arising from the unreasonable and excessive force used against Plaintiff, DENZELL YOUNG, on April 5, 2023, in Culver City, California by Defendants Officer Kywan Owens and Rico Gutierrez which resulted in the violation of Plaintiff's rights guaranteed under the United States Constitution.

Plaintiff First Amended Complaint raises two claims for relief:

1. Excessive Force in violation of 42 U.S.C. § 1983 against Defendants Officers KYWAN OWENS and RICO GUTIERREZ;
2. Violation of 42 U.S.C. § 1983 against Defendant City of Culver City based on Monell Liability

On April 5, 2023, Plaintiff Denzell Young ("Plaintiff" or "Young") was stranded in the roadway when Defendant Officers responded to the scene, purportedly to assist him in moving the vehicle. (Facts Nos. 7–12; AMF No. 67.) Within minutes, and without advising Plaintiff why he was being detained, Defendant Officers forcibly restrained Plaintiff, brought him to the pavement, applied pressure to his neck, struck him in the head with a closed fist, pulled him by his hair, and threatened to deploy a Taser directed toward his head. (Facts Nos. 15, 19–21, 25–26, 32–36, 38–40, 43; AMF Nos. 70–72.)

Defendants now seek summary judgment by characterizing Plaintiff as an armed and dangerous individual who actively resisted and attempted to "fight" and "run" from law enforcement. (Facts Nos. 13, 20, 25, 27, 29–31, 34–38.) However, Defendants' characterization of the incident is contradicted not only by Plaintiff's sworn testimony and the contemporaneous video evidence, but by Defendant Officers' *own* police report and deposition testimony and Officer Owens' prior sworn testimony at the preliminary hearing. (Facts Nos. 25, 27, 31–36, 43; AMF Nos. 68–72.) Indeed,

Defendant Officers admitted that Plaintiff initially complied with their commands, that they had not confirmed Plaintiff was the individual associated with the Felon Armed and Dangerous designation returned on the vehicle, that they had not observed Plaintiff in possession of a weapon, and that they failed to explain why he was being detained. (Facts Nos. 6, 13, 15, 19–21, 29–30; AMF No. 73.) Owens further admitted that Plaintiff never actually fled and that he maintained physical control over Plaintiff's body during the encounter. (Facts Nos. 27, 29, 37; AMF No. 69.)

Perhaps most troubling are the material inconsistencies in Defendant Officers' accounts of the very conduct they now seek to justify. At the preliminary hearing, Owens testified that both officers utilized their combined strength to take Plaintiff to the pavement, whereas during their subsequent depositions, both officers attributed the initial fall to Plaintiff tripping over their feet. (Facts Nos. 25–26.) Owens initially denied placing his arm around Plaintiff's neck, only to subsequently acknowledge that his arm was positioned around Plaintiff's lower neck and chest. (Facts Nos. 32–33, 35, 39; AMF No. 70.) Similarly, although Owens testified at the preliminary hearing that Plaintiff was running from the officers, he subsequently conceded during his deposition that Plaintiff never actually fled. (Facts Nos. 27, 29; AMF No. 69.) Defendant Officers also provided conflicting accounts regarding the location of Owens' closed-fist strike on Plaintiff, the nature of Plaintiff's purported resistance, and whether Plaintiff was, in fact, fighting the officers. (Facts Nos. 31, 36–37; AMF Nos. 68, 72.) These inconsistencies bear directly upon the credibility of Defendant Officers and the objective reasonableness of their conduct and thereby must be reserved for the trier of fact.

Rather than addressing these material factual disputes, Defendants devote a substantial portion of their Motion to Plaintiff's criminal history and allegations arising from an unrelated incident, the underlying circumstances of which Defendant Officers admittedly had not ascertained at the time they employed force against Plaintiff. (Facts Nos. 1–6, 13, 15, 44–53; AMF No. 73.) Notably, the criminal charges

for resisting or deterring an executive officer (Penal Code § 69), assault with a firearm (Penal Code § 245(a)(2)), and battery (Penal Code § 242) were subsequently dismissed against Young. (Facts Nos. 1–2, 54.) The issue before this Court is not whether Plaintiff has a criminal history or whether information subsequently obtained justified his arrest[1], but whether the nature and degree of force employed by Defendant Officers were objectively reasonable under the totality of the circumstances confronting them at the time.

Moreover, genuine disputes of material fact exist concerning the adequacy of the Culver City Police Department's training, supervision, investigation, and discipline of its officers. (Facts Nos. 58, 61, 63–65.) Specifically, Owens testified that officers are permitted to pull individuals by their dreadlocks and that, with respect to physical strikes, "wherever a strike lands is permitted," while Gutierrez acknowledged receiving no training regarding whether pulling an individual by their hair was permissible or prohibited. (Facts Nos. 58, 61, 65.) Despite the nature and extent of the force employed against Plaintiff, Owens testified that the Internal Affairs investigation was, to his recollection, deemed unfounded and that he was neither disciplined nor required to undergo corrective training. (Fact No. 65.) Both officers also acknowledged muting their respective body-worn cameras following the incident, conduct which Captain Estrada indicated may be contrary to departmental policy. (Facts Nos. 64–65.) Such evidence raises substantial questions concerning the Department's oversight, accountability, and enforcement of its own use-of-force policies.

---

[1] On May 7, 2025, Defendant City of Culver City filed a Motion to Dismiss (Dkt. No. 10). On June 26, 2025, this Court granted the Motion in part, with leave to amend, finding that Plaintiff's § 1983 claim, to the extent predicated on unreasonable seizure, was barred by Heck v. Humphrey, while expressly holding that Plaintiff's excessive force claim was not similarly barred. (Dkt. No. 19 at pp. 5–7, 9.) Consistent with this Court's ruling, Plaintiff's operative First Amended Complaint (Dkt. No. 20) does not assert a claim predicated on unreasonable seizure or unlawful arrest. Defendants' attempt to conflate the lawfulness of Plaintiff's arrest with the constitutional propriety of the force employed against him serves only to divert the Court's attention from the actual issue in dispute: whether Defendant Officers' use of force was objectively reasonable under the circumstances confronting them at the time.

In essence, Defendants' Motion improperly asks this Court to accept Defendant Officers' version of events, resolve conflicting testimony in their favor, make credibility determinations, and disregard evidence favorable to Plaintiff. This is precisely what Federal Rule of Civil Procedure 56 prohibits.

When the evidence is viewed in the light most favorable to Plaintiff, as it must be, a reasonable jury could conclude that Defendant Officers employed excessive and objectively unreasonable force in violation of Plaintiff's Fourth Amendment rights and that the City's inadequate training and oversight contributed to the deprivation of those rights. Accordingly, Defendants' Motion for Summary Judgment, or, in the Alternative, Summary Adjudication, should be denied in its entirety.

## II. ***STANDARDS FOR A MOTION FOR SUMMARY JUDGMENT***

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

"[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; see *High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.,* 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.,* 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592, 20 L. Ed. 2d 569 (1968)). "[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." *Chevron Corp. v. Pennzoil Co*., 974 F.2d 1156, 1161 (9th Cir. 1992).

The Court may not make credibility determinations to resolve this factual dispute on summary judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("[On a motion for summary judgment, the] evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.")

Accepting Plaintiff's version of events as true, as the Court must, a reasonable jury could easily conclude that Defendant Officers Owens and Gutierrez's use of force against Young was excessive and in violation of Plaintiff's Fourth Amendment right.

## III. ***LEGAL ARGUMENTS***

### A. **DEFENDANTS ARE NOT ENTITLED TO JUDGMENT ON PLAINTIFF'S FIRST CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS – EXCESSIVE FORCE**

A Fourth Amendment claim of excessive force is analyzed under the framework set forth by the Supreme Court in *Graham v. Connor*, 490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989). *Id.,* at 853. Under *Graham v. Connor*, 490 U.S. 386, 397 (1989), the inquiry on Plaintiff's excessive force claim is whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them at the time. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene. *Id.,* at 396. In determining the

objective reasonableness of the use of force, the Court "must assess the severity of the intrusion on Plaintiff's Fourth Amendment rights by evaluating the type and amount of force inflicted." *Espinosa v. City and County of San Francisco*, 598 F.3d at 537.

Courts have repeatedly held that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly. *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) This is because police misconduct cases almost always turn on a jury's credibility determinations. *Id.*

Force is excessive when it is greater than is reasonable under the circumstances. *Id.,* at 854. It is equally true that even where some force is justified, the amount actually used may be excessive. *Id.* When weighing the extent of force used against the need for force, the latter should be examined in light of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The force which was applied must be balanced against the *need* for that force: it is the need for force which is at the heart of the consideration of the *Graham* factors. *Alexander v. City & Cty. of S.F.,* 29 F.3d 1355, 1367 (9th Cir. 1994).

The court in *Santos* held that when the disputed facts and inferences are treated in the manner required by law, a jury could properly find a Fourth Amendment violation. *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002); see also Liston

v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997). The Court may "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in Graham." See Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir.2010).

Courts rely on specific factual circumstances when characterizing the amount of a non-lethal force used against a suspect. See, e.g., Lowry v. City of San Diego, 858 F.3d 1248, 1256 (9th Cir. 2017) ("… precedent establishes that characterizing the quantum of force with regard to the use of a police dog depends on the specific factual circumstances."); Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993) (holding that officer who fastened handcuffs so tightly around plaintiff's wrist that it caused pain and left bruises for weeks was not entitled to qualified immunity). This is also true for the use of force involving take-downs. See, e.g., Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007); Santos v. Gates, 287 F.3d 846, 855 (9th Cir. 2002).

i) **<u>Officer Owens and Gutierrez's Conduct was Excessive Force</u>**

The force used by Officer Owens and Gutierrez was excessive. A reasonable jury could find that the force employed by Officers Owens and Gutierrez was excessive, particularly given the multiple and distinct applications of significant physical force against Plaintiff Young. Specifically, Defendant Officers utilized their combined strength to force Plaintiff to the pavement, where Owens restrained Plaintiff's upper body while Gutierrez restrained his lower extremities. (Facts Nos. 25–27, 34–35.) Despite maintaining physical control over Plaintiff, Owens proceeded to place his arm around Plaintiff's neck in a choking fashion, impairing Plaintiff's ability to breathe. (Facts Nos. 32–33, 35, 39; AMF No. 70.) Notably, Owens admitted that he could not assess Plaintiff's breathing during portions of the encounter. (Facts Nos. 33, 35.) Owens further delivered a closed-fist strike directly to Plaintiff's temple while Plaintiff was not standing on his feet and pulled Plaintiff by his dreadlocks.

(Facts Nos. 36, 43; AMF Nos. 71–72.) Compounding the severity of the force, Gutierrez directed his Taser toward Plaintiff's head and threatened to deploy it, stating, "I'm going to tase this motherfucker," to which Owens responded, "Yes, tase him," despite Owens' admission that he believed he had already obtained physical control over Plaintiff. (Facts Nos. 38–40.) Gutierrez continued directing his Taser toward Plaintiff's head even as Plaintiff was being handcuffed. (Facts Nos. 40, 43.) Following the encounter, Plaintiff complained to responding paramedics of head pain and difficulty breathing. (Facts Nos. 32–33; AMF No. 70.)

The severity of these successive applications of force is particularly significant given the evidence that Plaintiff initially complied with Defendant Officers' commands, did not fight the officers, never actually ran from Officers. (Facts Nos. 15, 20–21, 27, 29–31; AMF Nos. 68–69.)

In *Bryan v. MacPherson*, 630 F.3d 805, 808 (9th Cir. 2010), after being pulled over for a seatbelt infraction and ordered to stay in the car, Bryan exited his car, acted belligerent, and ignored repeated orders to get back in the car. 630 F.3d at 822. The Ninth Circuit interpreted even that behavior as "passive" or "minor" resistance, rather than "truly active resistance." Id. at 830. Here, Plaintiff briefly pulled his hands away after Defendant Officers placed them behind his back without explaining the reason for his detention, believing that the officers were conducting an illegal search. (Facts Nos. 19–21; Exhibit "14" – Young Depo. at 180:6–22; 181:1–22.)

Viewed cumulatively, rather than as isolated applications of force, Defendant Officers' conduct- including the forcible takedown, neck restraint, closed-fist strike to the temple, pulling of Plaintiff's dreadlocks, and threatened deployment of a Taser directed toward his head- constitutes a substantial intrusion upon Plaintiff's Fourth Amendment rights. A reasonable jury could readily conclude that the nature and degree of force employed were grossly disproportionate to any claimed resistance Plaintiff presented and exceeded that which was reasonably necessary to effectuate any claimed detention.

***ii) Officers Did not use Objectively Reasonable Force***

Defendant's Motion for Summary Judgment contends that Plaintiff's allegations in the Complaint are contradicted by the video (Motion for Summary Judgment (Dkt. 40, pg. 15 lines 3-14). This is simply not true. It is Defendants' characterization of the incident that is directly contradicted by the video, their own sworn testimony, and their own contemporaneous police report.

First, Defendants' assertion that the officers merely fell to the ground as a result of Plaintiff's conduct is inconsistent with Owens' sworn testimony at the preliminary hearing, wherein he expressly testified that he and Gutierrez utilized their combined strength to take Plaintiff to the pavement. (Fact No. 25; Exhibit "12" – Preliminary Hearing Transcript at 13:11–14:11.) Indeed, the contemporaneous police report expressly states, "Using our combined strength, we forced Young to the concrete." (Fact No. 25; Exhibit "3" – Police Report, p. 2.) Yet, during their subsequent depositions, both officers attempted to characterize the initial takedown as an incidental fall resulting from Plaintiff tripping over their feet. (Facts Nos. 25–26.) These materially inconsistent accounts alone preclude a finding that Defendants' version of the incident is undisputed.

Equally it stretches credulity to argue as Defendants do that the dashcam footage does not depict Owens placing his hands on Plaintiff's neck. While Owens initially denied placing his arm around Plaintiff's neck, when confronted with the dashcam footage during his deposition, Owens expressly acknowledged that his arm was positioned around the lower portion of Plaintiff's neck and chest (conveniently, Defendants' now contend Owen's hand was on Plaintiff's chest (See Fact 32)). (Facts Nos. 32–33, 35, 39; AMF No. 70; Exhibit "10" – Owens Depo. at 61:11–16; 108:16–109:16.) Owens further acknowledged that he could not assess Plaintiff's breathing during portions of the encounter. (Facts Nos. 33, 35.) Plaintiff, in turn, testified that Owens choked him and impaired his ability to breathe, and Gutierrez acknowledged

that Plaintiff subsequently complained to paramedics of head pain and being winded. (Facts Nos. 32–33; AMF No. 70.)

Furthermore, Defendants' contention that Owens did not pull Plaintiff by his dreadlocks disregards Plaintiff's unequivocal sworn testimony to the contrary. (Fact No. 43; AMF No. 71; Exhibit "14" – Young Depo. at 184:8–185:12.)

Notably, Defendants' argument also fails to meaningfully account for Owens' admitted closed-fist strike to Plaintiff's temple while Plaintiff was not standing on his feet, or Gutierrez's repeated threats to deploy a Taser directed toward Plaintiff's head, despite Owens' admission that he believed he had already obtained physical control over Plaintiff. (Facts Nos. 36, 38–40, 43; AMF No. 72.)

Defendants cannot selectively rely upon portions of the video footage that purportedly support their position while disregarding the portions of that same footage that prompted Defendant Officers to contradict their own prior sworn testimony. Rather than establishing the absence of a genuine dispute of material fact, the evidentiary record reveals fundamentally inconsistent accounts concerning the manner in which Plaintiff was brought to the pavement, the nature and extent of the force employed against him, and the purported justification for such force. Resolution of these discrepancies necessarily requires credibility determinations and the weighing of evidence, neither of which is appropriate on summary judgment.

***iii) <u>The Officers Had No Information that Plaintiff was the Owner of the Vehicle or that He was Armed or Dangerous</u>***

"Excessive force claims…are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred" Saucier v. Katz, 533 U.S. 194, 207 (2001).

Here, Defendants attempt to contend that the officers knew that Plaintiff Young was the owner of the vehicle and the suspect with a felony warrant returned as armed and dangerous. (See Defendants' Motion for Summary Judgment Dkt 40, pg 15 lines

1-3). ***This contention is directly contradicted by the officer's own sworn deposition testimony.***

Specifically, Owens expressly acknowledged that the "Frank Adam David" return ***was attached to the vehicle***, not Plaintiff, and that he had not been advised that Plaintiff was the registered owner of the vehicle. (Facts Nos. 6, 13; AMF No. 73; Exhibit "10" – Owens Depo. at 41:10–18; 42:23–43:2.) Owens further admitted that he did not know what felony the vehicle was associated with or any of the circumstances underlying the designation. (Facts Nos. 6, 13, 15; AMF No. 73; Exhibit "10" – Owens Depo. at 41:10–42:13.)

Similarly, Gutierrez expressly admitted that, at the time Defendant Officers attempted to detain Plaintiff, he did not know whether Plaintiff had any outstanding felony warrants for his arrest. (Fact No. 13; AMF No. 73; Exhibit "11" – Gutierrez Depo. at 84:19–85:9.)

Thus, Defendants improperly attempt to impute knowledge to Defendant Officers that their own sworn testimony establishes they did not possess at the time of the use of force.

When disobedience of a police officer takes the form of passive noncompliance that creates a minimal disturbance and indicates no threat, immediate or otherwise, to the officer or others, it will not, without more, give rise to a governmental interest in the use of significant force. See also Young v. Cty. of L.A., 655 F.3d 1156, 1164 (9th Cir. 2011). Thereby, Plaintiff's mere confusion as to how a response for assistance to move his vehicle turned into a detention, even if regarded as passive noncompliance, does not warrant use of significant force.

In fact, Defendant Officers initially responded to the scene for the sole purpose of assisting Plaintiff in removing his disabled vehicle from the roadway. (Facts Nos. 7–12; AMF No. 67; Exhibit "10" – Owens Depo. at 38:8–24; Exhibit "11" – Gutierrez Depo. at 26:23–27:1.)

The Ninth Circuit requires courts to analyze the threat of harm at the

time the force is applied. *See Andrews v. City of Henderson*, 35 F.4th 710, 717 (9th Cir. 2022) ("Our precedent requires that we focus on the *immediate* threat of harm. That is, we consider the danger a suspect poses *at the time force is applied.*") (emphasis in original).

Indeed, Gutierrez expressly conceded that Plaintiff was not posing an immediate threat to the public when Defendant Officers approached his vehicle. (Fact No. 24; Exhibit "11" – Gutierrez Depo. at 110:21–111:1.) Gutierrez further acknowledged that Plaintiff was initially complying with their commands and that, at that juncture, Plaintiff fleeing was not perceived as a threat. (Facts Nos. 21–23; Exhibit "11" – Gutierrez Depo. at 118:20–119:3.)

On this record, it cannot be said that based on the totality of the circumstances that the level of force used by the Officers was necessarily reasonable. *See Hammer v. Gross*, 932 F.2d 842, 846 (9th Cir. 1991) ("The question is not simply whether the force was necessary to accomplish a legitimate police objective; it is whether the force used was reasonable in light of *all* the relevant circumstances.").

***iv) <u>Defendants' Failure to Intervene Constitute a Violation of Plaintiff's Rights</u>***

An officer may be held directly and individually liable under 42 United States Code section 1983 for passively observing the use of constitutionally excessive force that could have been prevented. (See, e.g., Ensley v. Soper (11th Cir. 1998) 142 F.3d 1402, 1408 [police officers may be held liable for failing to intervene to halt excessive force].

Indeed, the Ninth Circuit has expressly recognized that "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." (Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) See also United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994)

Here, both Defendant Officers expressly acknowledged their affirmative duty to intervene when another officer employs excessive force. (Fact No. 63; Exhibit “10” – Owens Depo. at 33:14–21; Exhibit “11” – Gutierrez Depo. at 24:4–10.) Nevertheless, the evidence supports a reasonable inference that neither officer fulfilled that duty during the subject encounter.

Specifically, Gutierrez was in immediate physical proximity to Owens throughout the use-of-force incident, and while Owens placed his arm around Plaintiff’s neck, and delivered a closed-fist strike to Plaintiff’s temple. (Facts Nos. 32–36; AMF Nos. 70–72.) When confronted with the dashcam footage, Gutierrez acknowledged that his face was directed toward Owens and Plaintiff, although he maintained that his attention was directed toward Plaintiff’s legs. (Fact No. 63; Exhibit “11” – Gutierrez Depo. at 55:17–56:11; 60:14–61:2.) Owens himself estimated that Gutierrez was approximately half an arm’s reach away when he punched Plaintiff and acknowledged that Gutierrez never instructed him to stop punching Plaintiff. (Fact No. 63; Exhibit “10” – Owens Depo. at 62:12–21; 98:14–99:6.)

Conversely, Owens not only failed to intervene when Gutierrez directed his Taser toward Plaintiff’s head, but affirmatively encouraged its deployment by stating, “Yes, tase him,” notwithstanding his admission that he believed he had already obtained physical control over Plaintiff. (Facts Nos. 38–40.) Owens further admitted that he never instructed Gutierrez not to point the Taser toward Plaintiff’s head. (Fact No. 63; Exhibit “10” – Owens Depo. at 71:18–20; 72:3–10.) Indeed, Gutierrez expressly admitted that he threatened Plaintiff with the Taser while Plaintiff was being handcuffed and continued pointing it toward Plaintiff’s head even after Plaintiff had been placed under arrest. (Facts Nos. 38–40, 43; Exhibit “11” – Gutierrez Depo. at 72:4–7; 74:7–21.

This conduct alone would amount to a failure to intercede and a violation of Plaintiff’s constitutional rights.

**B. DEFENDANT OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS THEIR ACTIONS COULD NOT REASONABLY HAVE BEEN THOUGHT CONSISTENT WITH THE RIGHTS THEY VIOLATED**

The Ninth Circuit applies a two-pronged inquiry to resolve claims of qualified immunity. First, the court determines whether the officer's conduct violated a constitutional right. Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). While an officer's actions are not judged "with the 20/20 vision of hindsight," the court must ask "whether a reasonable officer would have or should have accurately perceived that fact." Torres v. City of Madera, 648 F.3d 1119, 1124 (9th Cir. 2011) (citations omitted) (emphasis in original). Second, the court must determine whether the constitutional right at issue was "clearly established in light of the specific context of the case" at the time of the events in question. Mattos v. Agarano, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (quoting Robinson, 566 F.3d at 821). The plaintiff bears the burden of showing that the right at issue was clearly established. Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011).

***(1) Defendant Officers Actions Violated Plaintiff Young's Rights***

The Court in *Wilkins v. City of Oakland* explained that:

> Where the answer to that question of whether the officers acted objectively reasonable depends on disputed issues of material fact, "it is not a legal inquiry, but rather a question of fact best resolved by a jury. See *Santos v. Gates*, 287 F.3d 846, 855 n.12 (9th Cir. 2002) See also *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) (acknowledging that "the existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue," *Id*.

Disputed issues of material fact preclude granting qualified immunity on summary judgment. See *Johnson v. Jones*, 515 U.S. 304, 313(1995); *Glenn v. Washington County,* 673 F.3d 864, 870, fn. 7 (9th Cir. 2011) (citing E*spinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010)); *Cunningham v. City of Wenatchee*, 345 F3d 802, 809 (9th Cir. 2003); *Santos v. Gates*, 287 F.3d 846,855 n.12 (9th Cir. 2002).

As stated in *Glazer v. City of Long Beach,* 210 F.Supp.2d 1131, 1137–1138 (C.D. Cal. 2000): "The determination of whether a reasonable officer could have believed [the] conduct was lawful is a determination of law that can be decided on summary judgment only if the material facts are undisputed." *LaLonde v. County of Riverside*, 204 F.3d 947, 950 (9th Cir. 2000). ***Where a material dispute exists as to the facts regarding what the officer or plaintiff actually did, the case must proceed to trial.*** *Id.*, at 953. See also, *Wilkins v. City of Oakland*, 350 F.3d 949, 951 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate.").

In *Longoria v. Pinal County*, 873 F.3d 699, 710 (9th Cir. 2017), the Ninth Circuit reiterated that "[w]here the facts are disputed, their resolution and determinations of credibility 'are manifestly the province of a jury.'" (quoting *Wall v. County of Orange*, 364 F.3d 1107, 1110 (9th Cir. 2004)). In *Longoria*, the Ninth Circuit denied qualified immunity to the defendant police officer because "a reasonable jury could also conclude that [the officer defendant] knew or should have known that [the decedent] was not holding a gun and that he did not assume a "shooter's stance" and could find that [the officer defendant's] statements to the contrary were not credible." *Longoria*, 873 F.3d at 711.

Here, Defendant Officers' entitlement to qualified immunity depends entirely upon disputed and highly contested facts. As in Wilkins and Longoria, the material factual disputes concern the very circumstances upon which the objective

reasonableness of Defendant Officers' conduct depends, including whether Plaintiff posed an immediate threat, whether Plaintiff actively resisted or attempted to flee, the manner in which Plaintiff was brought to the pavement, the nature and degree of force employed, and whether Plaintiff was already sufficiently restrained when additional force was employed. Similarly, notwithstanding Defendants' repeated characterization of Plaintiff as actively fighting and attempting to flee, Owens admitted that Plaintiff never actually fled, maintained that he had physical control over Plaintiff, and acknowledged that he would not characterize the encounter as a fight. (Facts Nos. 27, 29, 31, 37; AMF Nos. 68–69.) As the Court found in *LaLonde,* "where a material dispute exists as to the facts regarding what the officer or Plaintiff actually did, the case must proceed to trial." *LaLonde*, supra, at 204 F.3d at 953.

As discussed above, there is sufficient evidence upon which a jury could conclude that the Officers' actions were excessive. As such, these material factual disputes preclude granting of qualified immunity by summary judgment.

(2) ***The Right was Clearly Established***

The court must also decide "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. at 232. "Clearly established" means the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

"If qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment." Deorle v. Rutherford, 272 F.3d 1272, 1286 (2001). "Otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." Deorle, 272 F.3d at 1286.

As the Ninth Circuit stated in Gravelet-Blondin, the “right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008.” Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1093 (9th Cir. 2013) (citing Nelson v. City of Davis, 685 F.3d 867, 881 (9th Cir. 2012)).

As we explained in *Deorle*, "[i]t does not matter that no case of this court directly addresses the use of [a particular weapon]; we have held that '[a]n officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury.'" 272 F.3d at 1286 (quoting *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994)).

Moreover, there is “clearly established precedent that would have made it sufficiently clear to reasonable officials that the acts here constituted excessive force.” *Atencio v. Arpaio*, 674 F. App’x 623, 625 (9th Cir. 2016). For example, in *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021), the Ninth Circuit found that a jury could conclude that officers used excessive force when the officers executed a take-down maneuver in which the plaintiff was forcibly thrown to the ground, face-first, onto the pavement. Similarly, in Santos, 287 F.3d at 855, the Ninth Circuit held that an officer’s use of force was “quite severe” when the officers conducted a violent take-down of the suspect. Other analogous cases abound. See, e.g., Meredith v. Erath, 342 F.3d 1057 (9th Cir. 2003) (finding that a reasonable jury could find excessive force when an officer forcibly threw plaintiff to the ground, twisted her arm, and handcuffed her); Blankenhorn v. City of Orange, 485 F.3d at 467–70 (finding that a rational jury could find officers’ use of force as unreasonable after “gang tackling” a suspect that was “rude, uncooperative, and verbally abusive” to officers and refused to comply with the officers order of kneeling and being handcuffed).

Given the numerous disputes of fact exist as to the level of force used and its justification summary judgment on the issue of qualified immunity must be denied.

**C. <u>DEFENDANT CITY IS NOT ENTITLED TO JUDGMENT IN ITS FAVOR ON THE SECOND CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS – *MONELL* CLAIM</u>**

Pursuant to 42 U.S.C. § 1983, Plaintiff asserts municipal liability claims against Defendant City for (i) an unconstitutional custom, policy or practice, (ii) failure to train or supervise, and (iii) ratification.

i. ***<u>Unconstitutional Custom or Practice</u>***

A plaintiff, under 42 U.S.C. §1983 may recover from a local government entity if his or her injury resulted from an official policy, custom or usage, or from a policy of inaction when such inaction amounts to a failure to protect constitutional rights. City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989).

Monell held that municipalities may be held liable under § 1983 for violations resulting from official custom or practice. 436 U.S. at 694. A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); see also Bouman v. Block, 940 F.2d 1211, 1231-32 (9th Cir. 1991). "Normally, the question of whether a policy or custom exists would be a jury question." Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996).

Here, notwithstanding Defendants' contention that the City of Culver City does not maintain a policy, custom, or practice of condoning excessive force, the evidence presented by Plaintiff calls into question whether the City's formally adopted policies are adequately implemented and enforced in practice. Specifically, although the City purports to train its officers concerning permissible restraint techniques, Owens expressly testified that officers are permitted to pull individuals by their dreadlocks and that, with respect to physical strikes, "wherever a strike lands is permitted." Gutierrez similarly acknowledged receiving no training concerning whether pulling an

individual by their hair is permissible or prohibited. (Facts Nos. 58, 61, 65.) Such testimony supports an inference that the actual practices and understanding of permissible force within the Department differ materially from the policies Defendants now rely upon in seeking summary judgment.

Furthermore, despite the City's express prohibition against chokeholds and its requirement that officers intervene upon observing another officer employ excessive force, the evidence supports a finding that Defendant Officers disregarded these policies without meaningful consequences. (Facts Nos. 32–40, 62–65; AMF No. 70.) Indeed, notwithstanding the availability of video evidence documenting the incident and Owens' admission that he delivered a closed-fist strike to Plaintiff's temple, the Internal Affairs investigation was reportedly deemed "unfounded," and Owens was neither disciplined nor required to undergo corrective training. (Fact No. 65.) Gutierrez, despite his direct participation in the use-of-force incident, could not recall ever being investigated or questioned by Internal Affairs concerning Plaintiff's complaint. (Id.)

Further demonstrating potential deficiencies in the City's oversight and accountability practices is the fact that both Defendant Officers admittedly muted their respective body-worn cameras following the incident, conduct which Captain Estrada acknowledged may be contrary to departmental policy. (Facts Nos. 64–65.)

Considered collectively, this evidence supports an inference that the City's actual practices tolerated conduct that its written policies purportedly prohibited.

As the Ninth Circuit noted in *Gomez v. Vernon,* 255 F.3d 1118 (9th Cir. 2001): "This turn a-blind-eye approach does not insulate the Department." Id. The Ninth Circuit in Gomez held that "[t]he Department's failure to investigate or correct constitutional violations supports the district court's finding that there was a policy or custom that led to violation of… rights." Id.

Here, the testimony of the City's designated Person Most Knowledgeable, Captain Estrada, demonstrates the inadequacy of the Department's investigation into

Plaintiff's excessive force complaint. Specifically, Estrada admitted that he did not interview either Defendant Officer, Plaintiff, or Sergeant Umutyan; omitted pertinent statements made by Defendant Officers from his investigative report; failed to ascertain whether the officers' muting of their body-worn cameras violated departmental policy; and failed to review applicable POST training materials. Perhaps most troubling, Estrada admitted that he did not examine Defendant Officers' history of similar complaints because the officers were going to be exonerated (See also Fact 59, Declaration of Owens ¶ 13; Dkt. No. 40-12 wherein he admits to prior violation). Notwithstanding these investigative deficiencies, Estrada concluded that the force employed against Plaintiff was reasonable, appropriate, and within both the law and departmental policies. (AMF No. 74; Exhibit "15" – Estrada Depo. at 12:9–14:24; 19:18–23:21; 30:21–31:21; 34:11–17; 35:5–14; 36:2–14.) Such evidence supports a reasonable inference that the Department's investigative practices serve to insulate its officers from accountability rather than meaningfully identify and correct unconstitutional conduct. This is precisely the type of "turn a-blind-eye approach" contemplated in *Gomez*, and, when considered in conjunction with the evidence of inadequate training and the absence of disciplinary or corrective measures, supports Plaintiff's contention that the City maintained a custom or practice of tolerating and condoning the use of excessive force.

b) ***Failure to Train***

A plaintiff can prove a "failure-to-train" claim against a municipality "without showing a pattern of constitutional violations where a "violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" Long v. Cty. of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006)

Similarly, a "failure to supervise" theory can be the basis for a supervisor's liability under section 1983 where the failure amounts to deliberate indifference. City

of Canton, Ohio v. Harris, 489 U.S. 378, 387-90 (1989) (A failure to train or supervise may satisfy this criteria if, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of the constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.")

Here, Plaintiff has presented affirmative evidence demonstrating specific deficiencies in the City's training and supervision of its officers that directly correspond to the unconstitutional conduct at issue. Specifically, Owens testified that officers are permitted to pull individuals by their dreadlocks and that, with respect to physical strikes, "wherever a strike lands is permitted." Gutierrez, in turn, acknowledged receiving no training concerning whether pulling an individual by their hair constitutes a permissible method of restraint. (Facts Nos. 58, 61, 65.) These deficiencies are particularly significant given that police officers routinely encounter circumstances requiring them to physically restrain individuals in effectuating detentions and arrests. The need to adequately train officers concerning the permissible methods of restraint, the amount of force that may be employed, and the circumstances warranting the use of such force is therefore readily apparent.

Indeed, the constitutional violations alleged herein are the very type of highly predictable consequences contemplated in *Long*.

Owens' understanding of the permissible methods of restraint and physical strikes directly manifested itself in his conduct toward Plaintiff, including pulling Plaintiff by his dreadlocks and delivering a closed-fist strike to his temple. (Facts Nos. 36, 43; AMF Nos. 71–72.) Similarly, despite acknowledging that officers were not trained to use a Taser on an individual's head, Owens encouraged Gutierrez to deploy his Taser, notwithstanding his belief that he had already obtained physical control over Plaintiff. (Facts Nos. 38–40, 58.)

A rational jury could also easily find that City failed to train the officer defendants with respect to authorized methods of force.

## IV. ***CONCLUSION***

In light of the foregoing, Defendants have failed to establish the absence of genuine disputes of material fact warranting judgment in their favor as a matter of law. Rather, the evidentiary record, including the contemporaneous video footage, Plaintiff's sworn testimony, Defendant Officers' materially inconsistent accounts of the incident, and the testimony of the City's designated Person Most Knowledgeable, demonstrates substantial factual disputes concerning the objective reasonableness of the force employed against Plaintiff and the City's liability for the resulting constitutional violations. Based on the foregoing, Plaintiff DENZELL YOUNG respectfully requests that the Court deny Defendant's Motion for Summary Judgment in its entirety.

DATED: November 25, 2026

MGDESYAN LAW FIRM

By: /s/ Araksya Boyadzhyan, Esq.
ARAKSYA BOYADZHYAN
Attorney for Plaintiff,
DENZELL YOUNG